Cynthia G. FALK, Plaintiff,

v.

U.H.H. HOME SERVICES CORP.
d/b/a Kimberly Quality Care,
Inc., Defendant.

No. 92 C 1079.

United States District Court,
N.D. Illinois, E.D.

Oct. 18, 1993.

Herbert H. Victor, Chicago, IL, for plaintiff.

Guy P. Tully, Joan Ackerstein, Jackson, Lewis, Schnitzler & Krupman, Boston, MA, for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiff, Cynthia G. Falk, sued her former employer, Kimberly Services, Inc. ("Kimberly") in Cook County Circuit Court. Kimberly removed the claim to this Court on diversity grounds. Kimberly now files a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

### BACKGROUND

In ruling on the Defendant's Motion to Dismiss, the Court is required to accept as

true all facts alleged in the Plaintiff's complaint and to draw all reasonable inferences from the pleadings in favor of the Plaintiff. *Gillman v. Burlington N.R.*, 878 F.2d 1020, 1022 (7th Cir.1989). Therefore, the Court sets out the facts of this case as they are alleged in the Plaintiff's complaint.

Cynthia Falk enjoyed a successful career at Kimberly Services, a company that provides employment placement services for hospitals. She began working for Kimberly in 1980 as Branch Manager of its Cincinnati, Ohio office. In August of 1981 she was promoted to Regional Director for the Boston, Massachusetts area. From 1981 to 1987 she significantly expanded the sales territory served by the Boston office. By 1988 Falk was earning in excess of $100,000 per year, had eliminated her travel responsibilities, and had purchased a condominium in Boston which she shared with her boyfriend.

In 1990 Falk was contacted by the C.E.O. of Kimberly, Lawrence Stuesser. Stuesser stated that, based on Falk's success in Boston, she would be the perfect person to expand Kimberly's Staffing Division in the Chicago metropolitan area. Stuesser told Falk that, although the job would entail more travel and administrative duties than her Boston position, it would also offer her greater financial opportunity. Falk decided to accept the new position. She then met with Kimberly's Senior Vice–President, Paul Touchton, to negotiate the responsibilities, salary, bonus, and authority of the Chicago position. The two agreed that Falk would market Kimberly's services in the greater Chicago area and that Kimberly would supply her with an office and transportation budget. On January 18, 1991, Falk left her position in Boston and moved to Chicago.

Falk soon encountered difficulties with other Kimberly employees in Chicago. Falk found that Kimberly's Chicago staff viewed her as potential competition which would cause them loss of income. On February 15, 1991 Don Camp, Kimberly's Senior Vice President of its Central Division, contacted Falk. He informed Falk that she was on his "turf" and that she reported to him.

On April 8, 1991 the Branch Manager of Kimberly's Skokie, Illinois office complained that Falk was taking away potential business from the Skokie office and that she should be stopped. That same day, Camp notified Falk that her sales activities were to be strictly confined to the city limits of Chicago. When Camp was informed that this restriction was in violation of Falk's agreement with Kimberly, he threatened to close her office if she violated his directive. Falk then complained to Touchton about Camp's limitations. Touchton responded that, because of a restructuring at Kimberly, Falk came under Camp's direction and Touchton was powerless to intervene. In 1992, Falk's office was closed for lack of business and her employment at Kimberly was terminated.

Falk now sues Kimberly under Illinois's law of promissory estoppel. She argues that Kimberly promised her a certain type of employment in the Chicago area. In reliance on that promise she gave up an established and highly profitable position, left friends and family, and vacated an expensive condominium. Kimberly then broke its promise by giving her an inferior position within Chicago's city limits. Under Illinois law, she argues, Kimberly should now be made liable for her lost wages, fringe benefits, attorney's fees, other costs, and punitive damages.

In response to Falk's complaint, Kimberly files this motion to dismiss. Kimberly argues that, even if all of the facts as alleged are true, the company is not liable for any of the claimed relief. Kimberly contends that in Illinois an employee invoking promissory estoppel against an employer must allege that the employer promised to employ him or her for a certain duration of time. Kimberly argues that it never made any promises to Falk concerning the duration of her employment with the company. As a result, she was an employee at will who could be terminated at any time without cause.

## ANALYSIS

Promissory estoppel is an equitable doctrine that may be invoked in both contractual and noncontractual settings. *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1223 (7th Cir.1991). Illinois's law of promissory estoppel has four elements. To establish a claim a

plaintiff must allege that (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and foreseeable by defendant; and (4) plaintiff relied on the promise to its detriment. *Quake Const., Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 152 Ill.Dec. 308, 322, 565 N.E.2d 990, 1004 (Ill.1990). In the present case only the first element is in dispute. Kimberly does not contest that Falk's actions created a detrimental reliance interest if taken pursuant to a promise, or that those actions were foreseeable to Kimberly. Kimberly only argues that Falk did not, and cannot, allege the existence of an unambiguous promise.

■ In order to allege an unambiguous promise for the purposes of a promissory estoppel claim, an express promise is not required. *First Nat'l Bank v. Sylvester*, 196 Ill.App.3d 902, 144 Ill.Dec. 24, 31, 554 N.E.2d 1063, 1070 (Ill.App.Ct.), *appeal denied*, 133 Ill.2d 555, 149 Ill.Dec. 320, 561 N.E.2d 690 (Ill.1990). A promise may be inferred from conduct and words. *Id.* In *First Nat'l Bank* the Illinois Appellate Court considered a promissory estoppel claim made by a construction company against a bank. The bank had repeatedly extended the company credit over a long period of time. The construction company entered a subcontract in reliance on obtaining further financing from the bank. The bank refused to extend credit causing the company to default on it's contract. The Court held that the bank's past practice could estop it from refusing to extend credit and, as a matter of law, it could be held liable for the company's reliance expenses. *Id.*

In employment relationships, however, promises concerning the duration of employment must be alleged with more specificity. Illinois courts have traditionally adhered to the presumption of employment at will. An overly permissive operation of the promissory estoppel doctrine in an employment setting could undermine that presumption. *Goldstick v. ICM Realty*, 788 F.2d 456, 465 (7th Cir.1986); *Lamaster v. Chicago & N.E. Ill.Dist. Council*, 766 F.Supp. 1497, 1505 (N.D.Ill.1991). In *Simmons v. John F. Kennedy Medical Center*, 727 F.Supp. 440 (N.D.Ill.1989), a federal district court consid-

ered an employee's claim that her employer had promised to employ her for a certain duration. The Court found that under Illinois law the company's promise to pay her an annual salary and reimburse her for a two year MBA program did not constitute an "unambiguous" promise of employment for a certain duration. *Id.* at 443, 444. In *Geva v. Leo Burnett*, the Seventh Circuit Court of Appeals considered a plaintiff's use of Illinois's promissory estoppel law against his former employer. *Geva*, 931 F.2d at 1220. The plaintiff argued that his employer's statement to the Immigration and Naturalization Service that it intended to employ the plaintiff for three years amounted to a promise. The Court held that this could not be considered an unambiguous promise upon which the plaintiff could rely. *Id.* at 1223–1224.

In the present case Falk alleges that Kimberly made two promises to her. The first concerned the duration of her employment with Kimberly. The second concerned the specific terms of her employment in Kimberly's Chicago office.

■ Falk fails to adequately allege the presence of the first promise. While Falk is not required to plead evidence or even ultimate facts under the notice pleading requirements of the Federal Rules of Civil Procedure, she has only the slightest support for her claim that Kimberly promised to employ her for a certain duration. In fact, she seems to make this argument only in response to Kimberly's assertion, in it's motion to dismiss, that Illinois law requires her to make it. To support the existence of such a promise Falk points to notes, incorporated into her complaint, regarding the terms of her Chicago position. She argues that the assurance that she would have "30 days to get [the] office ready", a "2 month start up for [the] main office" and that her $300.00 car allowance would be "taxed year end" amount to an unambiguous promise of employment of a certain duration.

■ The second promise alleged by Falk concerns the extent of opportunities available to her in the Chicago position. Falk's complaint alleges that Kimberly in-

duced her to accept the Chicago position by promising her an opportunity to market its services throughout the entire region. The complaint further alleges that upon Falk's arrival in Chicago, Kimberly broke its promise when Don Camp limited her territory to the city of Chicago. Kimberly's memorandum in support of it's motion to dismiss completely ignores the allegations of this promise. Instead, Kimberly argues broadly that in Illinois any collateral estoppel claim brought by an employee against an employer must allege the existence of a promise to employ for a certain duration. Kimberly contends that Falk's failure to meet this threshold requirement forecloses her claim. Kimberly cites *Briggs v. Dominic Dimatio*, 1991 WL 14063, 1991 U.S.Dist.Lexis 1088 (N.D.Ill.1991) and *Simmons v. John F. Kennedy Medical Center*, 727 F.Supp. 440 (N.D.Ill.1989) to support it's position. But Kimberly reads *Briggs* and *Simmons* too broadly. In those cases the only issue before the Court was the question of whether the employer made a promise to retain the employee for a certain duration. The plaintiff-employees in those cases made no additional allegations concerning promises of employment of a certain character as does Falk in this case. As a result, Kimberly is incorrect in arguing that the Court should dismiss Falk's entire claim merely because she does not adequately allege a durational promise.

The question on this motion to dismiss is now whether the description Kimberly gave Falk regarding the Chicago position qualifies as an unambiguous promise. The complaint alleges that Kimberly's CEO, Lawrence Stuesser, initially told Falk that the Chicago position would require extensive travel to expand Kimberly's presence in the entire Chicago metropolitan area. Additionally, Falk had a meeting with Vice President, Paul Touchton, in Atlanta, Georgia to discuss the responsibilities of the Chicago office. Falk's complaint incorporates her notes from that meeting. These notes indicate that the Chicago office would service Kimberly's "City and Satellite Branches". The notes then outline recent sales statistics for a number of Chicago suburbs.

These allegations are sufficient to state an unambiguous promise under Illinois law of promissory estoppel. Falk alleges that at specific dates and locations certain high ranking Kimberly executives assured her that she would service the entire Chicago metropolitan area. Such assurances surpass the requirements of Illinois promissory estoppel law which does not require an express promise. *First Nat'l Bank*, 554 N.E.2d at 1070. A promise may be inferred from a person's actions and words. *Id.* It is reasonable that Falk might have inferred a promise concerning the extent of her Chicago territory from her contacts with Stuesser and Touchton. This Court finds that under Illinois law Falk's complaint fully states a promissory estoppel claim regarding Kimberly's promise of a certain type of employment.

## CONCLUSION

In the opinion of the Court, Falk has alleged a promissory estoppel claim with respect to the nature of her employment but has failed to allege a such a claim with respect to the duration of that employment. Accordingly, the Motion to Dismiss is DENIED in part and GRANTED in part, without prejudice. Plaintiff is hereby granted leave to file an amended complaint within thirty days of the date of this order.