# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3138

_____

| | | |
|---|---|---|
| Stanbury Law Firm, P.A., | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Internal Revenue Service, | * | |
| | * | [PUBLISHED] |
| Defendant/Appellee. | * | |

_____

Submitted: June 14, 2000
Filed: August 9, 2000

_____

Before LOKEN, BRIGHT, and ROSS, Circuit Judges.

_____

PER CURIAM.

After the Page Education Foundation ("Foundation") refused to disclose the names of its contributors voluntarily, the Stanbury Law Firm ("Stanbury") sued the Internal Revenue Service ("IRS") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Stanbury's suit sought to force the release of certain tax records containing the names of the Foundation's contributors and to mandate further IRS investigation into whether Alan Page ("Page"), a Justice of the Minnesota Supreme Court, can serve as the Foundation's President.

The IRS made a motion to dismiss under Rule 12(b)(6), and the district court granted it. In so doing, the court ruled that 26 U.S.C. § 6103(a) exempts the requested tax records from disclosure under FOIA, and, as a result, that no claim existed upon which relief could be granted. In addition, acting *sua sponte*, the district court used its power under Rule 12(f) of the Federal Rules of Civil Procedure to strike Stanbury's pleadings of "irrelevant" information that, in the court's view, "could only have been included to impugn Justice Alan Page." Stanbury appeals.

Although we agree with the district court that FOIA does not furnish a basis for the release of the documents requested by Stanbury, we vacate that portion of the court's order striking Stanbury's pleadings as an abuse of discretion. We therefore affirm in part and reverse in part.

## I.    BACKGROUND

In 1988, Page[1] established the Foundation as a 501(c)(3), tax-exempt, public charity. The Foundation was, and is, dedicated to the laudable goal of promoting opportunities for minority education through the implementation of scholarship programs and other endeavors. Although Page contributed some of its seed money, the Foundation has been primarily funded by contributions from many of Minnesota's largest, most prominent businesses and law firms.

During the first eight years of its existence, the Foundation voluntarily filed a copy of its annual IRS Form 990 with the Minnesota Attorney General's office. By so doing, the Foundation made the information contained therein available for public inspection; it thus disclosed, indirectly, the identities of the Foundation's contributors and the amounts contributed by each. Beginning with tax year 1997, however, the

_____

[1] At the time he created the Foundation, Page was a deputy attorney general. Subsequently, in 1992, Page was elected to the Minnesota Supreme Court.

Foundation ceased this voluntary practice and opted to keep the names of its supporters secret.

Apparently concerned that frequent appearances by many Foundation contributors before the Minnesota Supreme Court could result in a conflict of interest and the violation of ethical canons, Stanbury asked the Foundation to voluntarily disclose a detailed list showing the names of its contributors. The Foundation did not respond to Stanbury's request.

On October 9, 1998, Stanbury asked that the IRS release the Foundation's 1997 Form 990, pursuant to FOIA. When this request too met with no response, Stanbury filed suit in the district court on December 7, 1998. Invoking 5 U.S.C. § 552, Stanbury's suit sought an order which would (1) compel the IRS to release the Foundation's Form 990, Schedule A, for the tax year 1997, and (2) force the IRS to "investigate this situation to see if Alan Page became ineligible to be an organizer and officer of a § 501(c)(3) foundation upon his election to the Minnesota Supreme Court."

The IRS moved to dismiss, under Rule 12(b)(6), and in an order dated June 29, 1999, the district court made two significant rulings. First, the court found that 26 U.S.C. § 6103(a) precluded the IRS from releasing the requested documents. On that basis, the court granted the IRS's motion and dismissed Stanbury's suit. Second, acting on its own motion, the district court struck Stanbury's pleadings. In a single, short paragraph, the court stated only that:

> Under Rule 12(f) of the Federal Rules of Civil Procedure, this Court has the authority to "order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." In this case, Plaintiff's [Stanbury's] complaint and brief in opposition to the IRS' motion to dismiss contain information that is not relevant to the FOIA request and that could only have been included to impugn Justice Page.

Justice Page is not a party to this suit, and his conduct is not at issue here.
As a result, Plaintiff's [Stanbury's] pleadings will be stricken.

Add. at 3.

Stanbury has timely appealed, and he challenges both aspects of the district court's order.

## II.  DISCUSSION

### A.  The Application of FOIA to a Request for IRS Form 990.

Stanbury's primary argument on appeal is that the district court erred in dismissing its suit for failure to state a claim upon which relief could be granted. Although we review a district court's dismissal for failure to state a claim *de novo*, see Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995), in this case we conclude that the district court properly dismissed Stanbury's suit.

The FOIA requires that the government make its "records promptly available to any person," 5 U.S.C. § 552(a)(3), unless such documents are "specifically exempted from disclosure by statute . . . ." 5 U.S.C. § 552(b)(3). Nevertheless, despite the broad availability of government records under FOIA generally, virtually all tax documents are excluded from release by precisely the type of statutory exemption mentioned in § 552(b)(3). Specifically, § 6103(a) of the tax code requires that all tax returns and return information be kept confidential unless some other specific provision of the code permits release. See 26 U.S.C. § 6103(a) ("Returns and return information shall be confidential . . . except as authorized by this title . . . ."). As a result, tax documents are, as a rule, not subject to disclosure under FOIA.

Stanbury argues that the documents he requested are outside § 6103 because the following section, 26 U.S.C. § 6104, permits the release of certain information that tax-

exempt private foundations are required to provide. Specifically, 26 U.S.C. § 6104(b) states that "[n]othing in this subsection shall authorize the Secretary [or his delegate] to disclose the name or address of any contributor to any organization or trust (<u>other than</u> a private foundation, as defined in section 509(a)) . . . ." (Emphasis added.) Stanbury contends that this language permits the disclosure of the documents he requests with respect to the Foundation, but we disagree.

As the last phrase of the foregoing parenthetical indicates, a tax-exempt organization is not automatically classified as a private foundation. Indeed, if a § 501(c)(3) organization does not meet the distinct requirements provided by § 509(a), the organization is treated as public charity. From the Foundation's inception, the IRS determined that the Foundation failed to meet the criteria established for private foundations and therefore classified it as a public charity. At all times the IRS has treated the Foundation as such. No exception to the general confidentiality provision of § 6103 applies to public charities. Thus, because § 6103 applies to public charities and the Foundation is a public charity, the IRS was correct to conclude, as an administrative matter, that the documents requested by Stanbury could not be released under the FOIA, and the district court properly recognized this fact.

Stanbury argues that the district court should have taken it upon itself to reclassify the Foundation as a private foundation. Nevertheless, it does not appear that the court had jurisdiction to do so because reclassification would require the court to effectively issue a declaratory judgment. Although 26 U.S.C. § 7428(b)(1) permits organizations to challenge IRS determinations with respect to their own tax-exempt status, all other actions seeking declaratory judgments with respect to federal taxes appear to be barred by the Declaratory Judgment Act. <u>See</u> <u>Ingham v. Turner</u>, 596 F.2d 315 (8th Cir. 1979); 28 U.S.C. § 2201. The court was therefore correct when it declined to substitute its judgment for that of the IRS.

Because the Foundation has been classified as a public charity, any possible disclosure obligation on the part of the IRS under § 6104 is inapposite. As a public charity, and no other exception appearing applicable, § 6103's confidentiality requirement specifically exempts the Foundation's tax documents from disclosure under FOIA. Thus, as a matter of law, Stanbury has not stated a claim, and the district court was correct to dismiss.

### B.    Rule 12(f) Issues.

Stanbury also contends that the district court abused its discretion by striking Stanbury's pleadings as irrelevant. First, as a factual matter, Stanbury argues that certain basic information about Justice Page and his relationship to the Foundation was essential to the suit, particularly insofar as the complaint specifically asked that the court order further investigation by the IRS into Justice Page's eligibility to serve as a Foundation officer. Second, as a procedural matter, Stanbury argues that the court's action was deficient because it struck Stanbury's submissions in their "entirety[,] without specifically describing the particular sentences or phrases which supposedly justified that precipitous action."

This court has rarely been called upon to interpret Rule 12(f), which states, in pertinent part, that: "Upon motion made by a party . . . or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because the rule is stated in the permissive, however, it has always been understood that the district court enjoys "liberal discretion" thereunder. Thor Corp. v. Automatic Washer Co., 91 F.Supp. 829, 832 (D.C. Iowa 1950). See also, F.D.I.C. v. Niblo, 821 F.Supp. 441, 449 (N.D. Tex. 1993). Despite this broad discretion however, striking a party's pleadings is an extreme measure, and, as a result, we have previously held that "[m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted." Lunsford v. United States, 570 F.2d 221, 229 (8th Cir.1977) (citing 5 Wright & Miller,

*Federal Practice and Procedure: Civil § 1380* at 783 (1969)). See also, Resolution Trust Corp. v. Gibson, 829 F.Supp. 1103, 1106 (W.D. Mo. 1993); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.37[1] (3d ed. 2000) ("Courts disfavor the motion to strike, because it 'proposes a drastic remedy.'").

In this case, the district court struck both Stanbury's complaint and its memorandum in opposition to defendant's motion to dismiss, in their totality, because in the court's view those documents "contain[ed] information that is not relevant to the FOIA request and that could only have been included to impugn Justice Page." Yet the court made no attempt to detail the specific passages, if any, to which it referred. Moreover, in our view, the documents Stanbury filed in no way impugn the integrity of Justice Page.

After reading Stanbury's submissions to the district court, we see no impropriety which warrants the court's decision to strike them. Although Stanbury does detail Justice Page's relationship with the Foundation at some length, and indicates that this relationship could create conflict of interest issues, that information also provides important context and background to Stanbury's suit. It is true that this information may not be strictly relevant to the FOIA portion of Stanbury's action *per se*, but the release of documents under FOIA was not the sole object of Stanbury's complaint: Stanbury also sought to compel specific action by the IRS to determine "whether Page became ineligible to be an organizer and officer of a § 501(c)(3) foundation upon his election to the Minnesota Supreme Court." Although this portion of Stanbury's lawsuit was summarily dismissed for lack of jurisdiction—and properly so in our view—that fact does not vitiate the relevance of information included in Stanbury's complaint and memorandum which was designed to advance it. Therefore, Stanbury's submissions to the court were not irrelevant, and the district court abused its discretion when it found them to be so.

## III.   CONCLUSION

The district court properly resolved the issues before it on the merits: The IRS was not required to release the Foundation's tax documents to Stanbury under the Foundation's current tax classification, and the court was without power to reform the IRS's classification.  The district court's order of dismissal is therefore affirmed. However, because the district court abused its discretion when it ordered Stanbury's pleadings to be stricken, that limited portion of the court's order is hereby reversed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.